**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| ADRIANE JO COFFEY,<br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 3:25-cv-00200-CEA-CHS |

**REPORT AND RECOMMENDATION**

## I. Introduction

Plaintiff Adriane Jo Coffey ("Plaintiff") seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of benefits and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. § 401-34 and Title XVI of the Act, 42 U.S.C. §§ 1381-83f. [*See* Doc. 1].

Each party has filed a brief seeking judgment in its favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Docs. 13, 19, 20]. For reasons that follow, it is **RECOMMENDED** that Plaintiff's request for relief [Docs. 13, 20] be **GRANTED**, the Commissioner's request for relief [Doc. 19] be **DENIED**, and that the decision of the ALJ be **REMANDED**.

## II. Procedural History

On August 26, 2021, Plaintiff applied for disability insurance benefits under the Act, alleging disability as of May 14, 2021. (Tr. 17). Plaintiff's claims were denied initially as well as on reconsideration. (*Id.*) As a result, Plaintiff requested a hearing before an administrative law

judge. (*Id.*)

A hearing was held on March 19, 2024, that included Plaintiff's attorney. (*Id.*). Administrative Law Judge Gentry Hogan ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 39-64). The ALJ then rendered his decision on April 29, 2024, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 17-31).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial, but that request was denied. (Tr. 1). Exhausting her administrative remedies, Plaintiff then filed her Complaint [Doc. 1] on May 8, 2025, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing briefs, and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. The claimant has not engaged in substantial gainful activity since May 14, 2021, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: obesity, recurrent subclavian artery occlusion with left upper extremity claudication, mild left shoulder and left hand arthritis, Raynaud's disease, paralyzed left hemidiaphragm, and emphysematous lung changes (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations: stand and walk for 4 hours in an 8 hour workday; sit for 8 hours; frequent to all postural limitations; occasional use of ladders, ropes and scaffolds; no concentrated exposure to atmospheric conditions or occupational hazards such as unprotected heights and moving machinery; a sit/stand option, defined as an individual who can remain on task working

for 30 minutes and then change position from sit to stand or reverse without leaving the workstation or going off task and could do this repeatedly; and occasional overhead reaching with the non-dominant left hand.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 20, 1971 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 14, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-31).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result

in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, she is disabled; (4) if the claimant is capable of returning to work she has done in the past, she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, she is not disabled. *Id.* If at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs*., 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's

findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs*., 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**V. Analysis**

Among other things, Plaintiff claims that the ALJ did not consider a critical body of medical evidence from 2024 when crafting Plaintiff's RFC and denying Plaintiff benefits. [Doc. 13 at 7]. Specifically, Plaintiff claims that the ALJ "impermissibly played doctor and relied solely on his own lay interpretation of raw medical evidence in crafting an RFC." [*Id.*] According to Plaintiff, the ALJ needed a medical opinion to analyze a body of evidence from 2024 which

showed "moderate to severe hemodynamically significant right internal carotid artery stenosis" and left arm "marked claudication" from a fourth subclavian arterial bypass. [*Id.* at 9 (citing Tr. 883, 1014)]. Plaintiff argues that the ALJ's current RFC analysis runs afoul of the *Deskin* rule, which this Court has followed in narrow circumstances. *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 910 (N.D. Ohio 2008); *Murr v. Saul*, No. 3:18-CV-459-DCP, 2020 WL 1452942, at *7 (E.D. Tenn. Mar. 25, 2020). Thus, Plaintiff states, the case must be remanded to consider the medical evidence that the ALJ disregarded. [Doc. 13 at 11-12]; *see* 20 C.F.R. § 404.1545(a)(3).

By way of background, the ALJ found that Plaintiff suffered the severe impairments of obesity, recurrent subclavian artery occlusion with upper extremity claudication, mild left shoulder and left-hand arthritis, Raynaud's disease, paralyzed left hemidiaphragm, and emphysematous lung changes. (Tr. 20). The ALJ considered the October 2021 opinion of David Cox, M.D., and found that his opinion was not particularly persuasive. (*Id.*) The ALJ also considered the February 2023 opinion of consultative examiner, Robert A. Blaine, M.D., and found Dr. Blaine's opinion persuasive. (*Id.*)

According to Plaintiff, several medically significant events occurred after the medical opinions of Dr. Cox and Dr. Blaine were given. For example, on January 18, 2024, Plaintiff had a fourth subclavian arterial bypass performed by Michael B. Freeman, M.D. [Doc. 13 at 5 (citing Tr. 891)]. Additionally, Bridgette Smith, FNP, under the supervision of Dr. Freeman, noted in her reports that after Plaintiff's fourth bypass surgery, Plaintiff continued "to experience significant symptoms at rest as well as marked claudication." [Doc. 13 at 5 (citing Tr. 883)].

Plaintiff argues that Dr. Blaine's opinion is outdated because Dr. Blaine did not account for these events which occurred in 2024. Specifically, Plaintiff argues that when Dr. Blaine saw Plaintiff in 2023 "no further surgery was planned." [Doc. 13 at 8 (citing Tr. 26-27, 826, 828)].

Additionally, when Dr. Blaine viewed Plaintiff's medical records in 2023, the record did not show "marked claudication or other indication of arterial deficiency which would preclude light work." [Doc. 13 at 8 (citing Tr. 26-27, 826, 828)].

The facts of this case fit into the "*Deskin* rule" in its most narrow form. In *Deskin*, the record contained only one medical opinion from 2003, with two years' worth of medical records that were not viewed or analyzed by a doctor. *Deskin*, 605 F. Supp. 2d at 910. The court stated that, when making an RFC finding, it is "[c]ritical" that the ALJ consider opinions from medical sources who have reviewed a claimant's medical records. *Id.* at 911-12. Additionally, when "making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Id.* at 912. Thus, when a transcript contains only diagnostic data and no opinion from a medical source, the ALJ must further develop the record and "recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* However, the *Deskin* court added, if it is a case where the medical evidence shows relatively little impairment, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Id.*

While *Deskin* has been widely criticized as being overly broad, courts in this circuit have interpreted the general rule to apply "only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Murr*, No. 3:18-CV-459-DCP, 2020 WL 1452942, at *7 (quoting *Kizys v. Comm'r of Soc. Sec.,* 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (internal quotation marks omitted)).

The Commissioner is certainly correct that the ALJ is solely responsible for determining a plaintiff's RFC. [*See* Doc. 19 at 9]; *see also* 20 C.F.R. § 404.1545(a)(3); *Sellers v. Berryhill*, No.

3:16-CV-339-TAV-CCS, 2018 WL 989563, at *5 (E.D. Tenn. Jan. 22, 2018), *report and recommendation adopted*, No. 3:16-CV-339-TAV-DCP, 2018 WL 988084 (E.D. Tenn. Feb. 20, 2018) ("[T]he RFC determination is expressly reserved to the Commissioner.") (citations omitted). Further, the ALJ is not required to provide an analysis of every piece of medical evidence in the record. *See Sellers*, No. 3:16-CV-339-TAV-CCS, 2018 WL 989563, at *5. However, the ALJ does have a duty to develop the record if the record is inconsistent or incomplete. *See* 20 C.F.R. § 404.1512. And, the ALJ must build "an accurate and logical bridge between the evidence and the result" so that the court can provide meaningful review. *Malone v. Bisigano*, No. 1:25-CV-47-CEA-DCP, 2020 WL 14097104, at *5 (E.D. Tenn. Feb. 4, 2020), *report and recommendation adopted sub nom. Malone v. Comm'r of Soc. Sec. Admin.*, No. 1:25-CV-47, 2026 WL 479286 (E.D. Tenn. Feb. 19, 2026).

The question in this case is whether the ALJ made an RFC determination based on "an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Id.* The situation presented before this Court is as follows: (1) after Dr. Blaine examined Plaintiff in February 2023, Plaintiff had a fourth bypass surgery, in which a nurse noted that Plaintiff was still experiencing symptoms and marked claudication (Tr. 883); and (2) when asked by the ALJ in the hearing testimony, Plaintiff stated that her conditions regarding her left arm and breathing had worsened since her fourth bypass surgery. (Tr. 52).

The ALJ references these events and states that:

> In January 2024, the claimant reported she was still experiencing significant symptoms at rest, as well as marked claudication, which prevented her from working. She said she had reached a point where she had to get something done, since she needed to work and her left arm claudication symptoms were preventing that (16F/3). On January 18, 2024, the claimant had arteriogram and catheterization, with carotid to axillary artery bypass using the superficial femoral vein, with left upper extremity flow through the subclavian axillary artery, brachial artery, and 3 vessel runoff in the forearm to the wrist (16F/12).

However, the ALJ failed to offer any further explanation as to how this medical information influenced his RFC finding. The ALJ did not build "an accurate and logical bridge" between this medical evidence and the resulting RFC, or discuss how this evidence compared to Plaintiff's subjective allegations, daily activities, or any other pertinent medical evidence. *See Fancher v. Kijakazi*, No. 2:20-CV-198-TRM-JEM, 2022 WL 824024, at *12 (E.D. Tenn. Feb. 18, 2022), *report and recommendation adopted sub nom. Fancher v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-198, 2022 WL 824441 (E.D. Tenn. Mar. 17, 2022) (finding that the court cannot uphold an ALJ's decision where "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result") (internal quotation marks omitted).

In the RFC, the ALJ did limit Plaintiff to "occasional overhead reaching with the non-dominant left hand." (Tr. 22). The ALJ then stated in his RFC analysis that "[t]hroughout the period at issue" the record showed Plaintiff had normal range of motion, "no limitations," and the ability to use her arm despite her symptoms. (*Id.*) However, the "period at issue," does not appear to account for the 2024 medical evidence. For instance, when the ALJ cites to a doctor stating Plaintiff had "no limitations," it is from a 2021 medical record. (Tr. 28, 488). Thus, it is unclear to the Court if the 2024 medical evidence was considered when crafting the RFC or providing left arm limitations.

Further, the Court does not know how the 2024 surgery and its impacts, resulting treatments, or medications would have affected a doctor's medical opinion of Plaintiff's ability or inability to work. *See Stidham v. King*, No. 6:24-CV-87-HAI, 2025 WL 437075, at *7 (E.D. Ky. Feb. 7, 2025). For example, the ALJ did not state whether he found this evidence immaterial, or whether the evidence showed Plaintiff's condition had improved, worsened, or stayed the same. Thus, it appears to the Court that the ALJ based his RFC finding on an outdated medical source

opinion that ignored a potentially critical body of objective medical evidence. Consequently, the Court finds that the ALJ's RFC was not based on substantial evidence.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, there is insufficient support for the ALJ's findings, and the factual issues have not been resolved. Therefore, this matter shall be remanded for rehearing under sentence four.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, it is **RECOMMENDED** that Plaintiff's request for relief [Docs. 13, 20] be **GRANTED**; that the Commissioner's request for relief [Doc. 19] be **DENIED**; and that the decision of the ALJ be

**REMANDED**.[1]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370 (6th Cir. 1987).